CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

MAY 23 2013

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

# United States District Court
## For the Western District of Virginia
### Harrisonburg Division

|  |  |  |
|---|---|---|

YAVOCKA YOUNG,         )

        *Plaintiff,*         )

v.         )

CITI MORTGAGE, INC, *et al.*         )

        *Defendant*         )

Civil No. 5:12cv00079

**REPORT & RECOMENDATION**

By: James G. Welsh
U. S. Magistrate Judge

By order entered August 17, 2012 (docket #11), this case is before the undersigned for consideration of all non-dispositive pre-trial motions pursuant to 28 U.S.C. § 636(b)(1)(A) and for submission of proposed findings of fact, conclusions of law, and a recommended disposition of all dispositive motions in this case, including the motion to dismiss (docket #5), pursuant to 28 U.S.C. § 636(b)(1)(B). After the plaintiff's motion for leave to amend/correct complaint (docket #20) was granted (docket #21), the plaintiff filed an amended complaint against CitiMortgage, Inc., and JP Morgan Chase Bank (docket #26 and 27). Pursuant to Rule 12(b)(6), each defendant has moved to dismiss (docket #28 and 32), and the plaintiff has filed her responses in opposition to these motions (docket #36 and 38). After briefing (docket #29, 32 and 37), the views of the parties were heard on April 11, 2013.

## I.    INTRODUCTION

This dispute concerns residential property known by current house numbering as 61 Miller Road, Bayse, Virginia ("the property"). In 2004, Yavocka Young ("Young" or "the plaintiff") obtained a loan from CitiMortgage ("Citi") secured by a first lien deed of trust on the property. She subsequently obtained another loan, secured by a second lien deed of trust on the property in favor of JP Morgan Chase ("Chase"). In the Spring of 2011, Young encountered financial difficulties, and as a consequence payments on the property became delinquent. During the Summer and Fall of the same year she attempted to negotiate a repayment plan with Citi, but before such an agreement was reached Citi foreclosed. Facing extinguishment of its security interest in the property, Chase purchased it from Citi at the trustee's sale, and in early 2012 it ejected Young from the property.

Young thereafter sued Citi and Chase in the Circuit Court of Shenandoah County (Virginia), [1] seeking $200,000.00 in damages and/or restoration of her property ownership. Citi timely removed the plaintiff's suit to federal court (docket #1). In their separate Rule 12(b)(6) motions, the defendants advance two bases for dismissal of the plaintiff's cause of action. First, they argue that Young's claims are preempted by the Home Owner's Loan Act ("HOLA"), 12 U.S.C. §§ 1461 *et seq.*, and its implementing regulations. Second, they argue that Young's amended complaint does not satisfy Rule 8's pleading standard, because she has failed to state a claim establishing her entitlement to relief.

---

[1]  This action was initially filed in a Virginia state court and removed to federal court on the basis of diversity of citizenship. The choice of law of Virginia applies, *see Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941), and in evaluating the facts in the light most favorable to the non-moving party, Virginia substantive law consistent with Virginia's *lex loci delicti* (the law of the place of the wrong) is applicable, *see, e. g., Jones v. R.S. Jones & Assocs.*, 431 S.E. 2d 33, 34, (Va. 1993); *Buchanan v. Doe*, 431 S.E. 2d 289, 291(Va. 1993). *Blair v. Defender Servs.*, 386 F.3d 623, 625 (4th Cir. 2004).

## II.     RECOMMENDED DISPOSITION

For the reasons that follow, establishing a failure on the part of the plaintiff to state a claim against either defendant establishing her entitlement to relief, it is RECOMMENDED that the Rule 12(b)(6) motions of the defendants to dismiss be GRANTED (IN PART), and that this case be DISMISSED WITH PREJUDICE and STRICKEN from the court's active docket.

## III.    PLAINTIFF'S FACTUAL ALLEGATIONS

Young missed the March and April 2011 monthly payments due on the Citi loan, and she attempted to make a partial payment in May; however, Citi returned her May partial payment along with a letter explaining that nothing less than the full payment due up to that date would be accepted.

Over the course of the ensuing months, Young contacted Citi several times to pursue modification of her home loan. She was initially referred to a Citi employee named Kevin, but he never returned her calls. She talked to a Citi employee named Angela in June and provided her with her financial information. However, when she followed up in July, Angela had left the division, and Young was put in touch with a Citi employee named Sandra.

In August, a fourth Citi employee, Shameka Morseley, called Young and told her "that there had been a restructuring and that she was going to be handling the account going forward." Morseley assured Young that she was competent and that communication between Young and

Citi would improve going forward. Morseley and Young apparently communicated regularly over the next month, and sometime in September, Morseley explained to Young that "she had still not gotten a total balance from the legal department." At that time Morseley explained that it was a necessary precondition to the authorizing of any repayment arrangement, and she assured Young that, although "the process might take a while, … she [Morseley] was on the case."

Young did not hear again from Morseley until November 26, 2011, when Morseley called Young to inform her that Citi would foreclose in five business days unless Young paid $3,500. Morseley also informed Young that Citi would not discuss modification unless Young made the payment. After speaking to a supervisor, Young submitted her business bank statements in hopes of having the payment amount reduced, but, on Friday, December 2, 2011, the supervisor told Young that Citi was unwilling to reduce the amount.

When Young failed to make the demanded payment, Citi foreclosed on Monday, December 5, 2011, and at the trustee's sale Chase purchased the property. Young, thereafter, stopped paying the second loan, because, as she reasoned, "the sale [of the first lien deed of trust] should have absolved [her] of that debt [to Chase]." Young did, however, contact Chase in an effort to restructure the debt she owed to them, but, as with Citi, she was never able to reach anyone both willing and able to do so.

In January 2012, a "real estate agent" purporting to represent a debt collector made Young a "cash for keys" offer of $1,500.00. Unable to verify that the agent was working on

Chase's behalf, Young did not accept the offer. Sometime in the spring of 2012, Chase instituted an action for ejectment, and after prevailing in state court, it took possession of the property.

## IV. LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). And because Rule 8(a)(2) requires a "showing" of entitlement to relief in the plaintiff's complaint, a mere "blanket assertion[] of entitlement to relief" will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). Rather, to meet this test, a plaintiff must set forth facts which, if "accepted as true, 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570).

A claim is "plausible on its face," when its factual content permits a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "In other words, a complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 683).

Therefore, in deciding a Rule 12(b)(6) motion to dismiss, the court must accept all well-pleaded factual allegations as true, *Iqbal*, 556 U.S. at 664, and it must construe all factual allegations in the light most favorable to the plaintiff. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). However, the court is not obligated to accept unsupported

legal allegations, *Revene v. Charles County Commissioners*, 882 F.2$^d$ 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2$^d$ 844, 847 (4th Cir. 1979).

In the instant case, because Young is proceeding *pro se*, her pleadings "must be liberally construed [and] held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, this "'special judicial solicitude with which a district court should view ... *pro se* [filings] does not transform the court into an advocate.'" *United States v. Wilson*, 699 F.3$^d$ 789, 797 (4th Cir. 2012) (quoting *Weller v. Dep't of Soc. Servs.*, 901 F.2$^d$ 387, 391 (4th Cir. 1990)) (alteration in original). Thus, even a *pro se* plaintiff must clear the modest hurdle of stating a plausible claim showing entitlement to relief. *See, e.g., Giarratano v. Johnson*, 521 F.3$^d$ 298, 306 (4th Cir. 2008) (dismissing a prisoner's *pro se* complaint which set forth "no facts sufficient to state a claim to relief that is plausible on its face.").

## V.    ANALYSIS

### A.   Sufficiency of the Allegations in Young's Complaint

*Claims for Tortious or Wrongful Foreclosure against CitiMortgage*
*(Counts One, Two, Four, and Eight)*

Four of Young's ten counts attempt, in essence, to state a cause of action for a tort arising from Citi's foreclosure sale. Count One (entitled "Negligence") alleges that Citi "negligently

conducted a foreclosure sale on [Young's] property and … negligently ejected [her] from" her home. Amended Complaint (docket #27 p 7 (¶ 9)). Additionally, in Count One she alleges that Citi "negligently handled, serviced, and processed charges, fees, expenses, and other aspects of [Young's] loan and mortgage, including the loan modification process." *Id.* p 7 (¶ 10). In Count Two (entitled "Wantonness"), she alleges that Citi acted with reckless indifference to the consequences, and "consciously and intentionally conducted a wrongful foreclosure sale on [her] property." *Id.* pp 7-8 (¶ 14). Additionally, in this count the plaintiff alleges that "these actions were taken … in an effort to increase profits for both defendants." *Id.* p 7 (¶ 16). In Count Four (entitled "Wrongful Foreclosure"), the plaintiff alleges that "Citi initiated a foreclosure proceeding against [her] in violation of law," and she adds that "Chase wrongfully brought an action for ejectment." *Id.* p 8 (¶ 24). As an additional claim of tortious misconduct, in Count Eight (entitled "Intentional and/or Malicious Conduct"), Young separately alleges that the defendants acted "intentionally and/or maliciously, [leading] to the damages of Plaintiff as a direct proximate result." *Id.* at 10 (¶ 51).

As the Virginia Supreme Court explained in *Richmond Metro v. McDevitt Street Bovis, Inc.*, for a cause of action to sound in tort, the plaintiff must allege that the defendant breached a common law duty, rather than a duty "existing between the parties solely by virtue of the contract." 507 S.E.2<sup>d</sup> 344, 347 (Va. 1998). As the source of such a cognizable duty, Young points to the Supplemental Directives issued under the Home Affordable Mortgage Program ("HAMP"), [2] and she augments this argument by pointing-out that in several instances the breach of HAMP directives have been held to support a claim in tort or contract. *See e.g.,*

---

[2] HAMP was created through the Emergency Economic Stabilization Act of 2008, 12 U.S.C. §§ 5201 *et seq.*

*Marques v. Wells Fargo Home Mortgage, Inc.*, 2011 U.S. Dist. LEXIS 54907 (SDCal. 2011); *Turbeville v. J.P. Morgan Chase Bank*, 2011 U.S. Dist. LEXIS 42290 (SDCal. 2011); *Speleos v. BAC Home Loans Servicing, LP*, 755 F. Supp. 2$^d$ 304 (DMass. 2010).

While, as a general proposition, states may create a private right of action incorporating as an element some violation of federal law, *Wigod v. Wells Fargo Bank*, 673 F.3$^d$ 547, 581 (7th Cir. 2012), the decision whether to do so is up to each individual state. And while Massachusetts and California may allow a borrower to sue based on violations of HAMP regulations, it is a dubious proposition at best to suggest, as the plaintiff does, that the Virginia Supreme Court would recognize a claim in tort based on such a legal theory, first and foremost given the fact that the plaintiff's suit contravenes Congress' exclusion of a HAMP-based private cause of action. *See generally Spaulding v. Wells Fargo Bank, N.A.,* 2013 U.S. App. LEXIS 7866, *14 (4th Cir. Apr. 19, 2013) (HAMP "does not provide a private right of action."); *Topchian v. JPMorgan Chase Bank, N.A.*, (WDMo. case no. 4:12cv910; Apr. 16, 2013) (holding that there is no private right of action for loan modification under HAMP); *Miller v. Chase Home Finance, LLC*, 677 F.3$^d$ 1113 (11th Cir. 2012) (holding that there exists no implied private right of action under HAMP); *Pennington v. HSBC Bank USA, N.A.,* 493 Fed. Appx. 548, 552 (5th Cir. 2013) (court rejected a state law-based claim of entitlement, irrespective of HAMP eligibility, to a permanent loan modification on the basis of HAMP).

The rationale utilized by the Fifth Circuit in rejecting the concept of a state law-basis for a claim of loan modification entitlement provides a strong additional basis to doubt that the Virginia courts would recognize a HAMP-based cause of action. As the Fifth Circuit cogently

pointed-out, Pennington's indebtedness to HSBC was never HAMP-eligible. Young's loan in the instant case was similarly never HAMP eligible, [3] and this fundamental similarity suggests strongly that on this fact alone the Virginia courts would recognize a HAMP-based cause of action.

Accordingly, each of the four counts of the plaintiff's Amended Complaint alleging, in substance, that Citi committed a tortious wrong by foreclosing on her property fails to state a claim establishing her entitlement to relief.

*Young's Claim that Chase's Ejectment Action was Tortious*
*(Count Four against Chase)*

In Count Four (entitled "Wrongful Foreclosure"), Young alleges that Chase "wrongfully brought an action for ejectment." Amended Complaint at 8 (¶ 24). Although bringing a baseless civil action, such as an action for ejectment, may give rise to a claim for malicious prosecution, such a claim requires proof "that the prosecution was (1) malicious, (2) instituted by or with the cooperation of the defendant, (3) without probable cause, and (4) terminated in a manner not unfavorable to [her]." *Reilly v. Shepherd*, 643 S.E.2d 216, 218 (Va. 2007). *See Donohoe Constr. Co. v. Mount Vernon Assoc.*, 369 S.E.2d 857, 862 (Va. 1988); *Allstock v. Moore Lime Co.*, 52

---

[3] At the time relevant to the plaintiff's claim, to be eligible for HAMP (Tier 1) a loan must be for a borrower's primary residence, and it was not until 2012 that the HAMP program was expanded to make a broader class of loans, including rental properties, eligible for assistance. Dep't of Treasury, Home Affordable Mortgage Program, Supplemental Directive 9-01 (April 6, 2009). Available at *https://www.hmpadmin.com//portal/programs/docs/hamp servicer/ sd0901.pdf.* (May 2, 2013). To have been eligible, it must have been for her primary residence, and as her original complaint makes clear, the property was not her primary residence. *See* Docket #1-1 at 7 (alleging that the property "was the center of many family celebrations and an ongoing place of personal respite," expressing the hope that it would be "a family property where she and her loved ones could spend holidays and other special times together," and seeking the award of damages for loss of rental income).

S.E. 213, 214 (Va. 1905). It is undisputed in the instant case that Chase prevailed in its state court ejectment action; thus, Young simply has no possible claim for malicious prosecution.

*Young's Unspecified Tort Claims against Chase*

*(Counts One, Two, and Eight against Chase)*

In Counts One and Two, Young alleges that "the Defendants" are liable "for all natural, proximate, and consequential damages" caused by their conduct, Amended Complaint at 7-8 (¶¶ 12 and 18), and in Count Eight she accuses Chase of acting "intentionally and/or maliciously," leading "to the damages of Plaintiff as a direct proximate result," *Id.* at 10 (¶ 51). In none of these counts, however, does she identify what conduct of Chase gives rise to these claims, [4] and it is only in the "Background" section of her Amended Complaint, *Id.* at 2-6, that any clue is offered as a basis for these claims. Therein, she alleges, in essence, that Chase dragged its feet in responding to her calls requesting refinancing, *Id.* at 5, and that Chase wrote-off the indebtedness as irresolvable and instituted the ejectment action before she could make any progress toward refinancing, *Id.* at 5–6.

Assuming this all to be true, Chase may well be guilty of lousy customer service, but lousy customer service is not a cognizable tort. Young's complaint fails absolutely to identify any legal duty that would oblige Chase to offer her refinancing. It may be within the realm of possibility that such a duty could arise from the terms of a deed of trust or promissory note, or from some type of promise made by Chase to Young, but any such claim based on breach of such a duty would be one sounding in contract, and not in tort. *See Mathews v. PHH Mortg.*

---

[4] To the extent that they are based on Chase's institution of an ultimately successful action in ejectment, they fail to state a claim for malicious prosecution for the reasons discussed.

*Corp.*, 724 S.E.2$^d$ 196, 200 (Va. 2012) ("A deed of trust is construed as a contract under Virginia law."). As a result, Counts One, Two, and Eight against Chase should also be dismissed with prejudice.

*Unjust Enrichment Claim against "Defendants"*
*(Count Three)*

Count Three in Young's complaint alleges that the foreclosure "resulted in Defendants being unjustly enriched by the payment of fees, insurance proceeds and equity in the home." [5] Amended Complaint at 8 (¶ 20). Distinct, therefore, from her tort and contract claims, in Count Three the plaintiff assets an equitable theory of recovery "based upon an implied contract to pay the reasonable value of services rendered." *Mongold v. Woods*, 677 S.E.2$^d$ 288, 292 (Va. 2009). Essentially, she is claiming in Count Three that the "Defendants" have been unjustly enriched at her expense and that she is entitled to recover that unjust enrichment. *See Kern v. Freed Co.*, 299 S.E.2$^d$ 363, 365 (Va. 1983). *See also* Restatement (Third) of Restitution & Unjust Enrichment § 1.

To recover under this theory, however, Young must prove (1) that "[she] conferred a benefit on" the defendants, (2) that the defendants "knew of the benefit and should reasonably have expected to repay" her for it, and (3) that the defendants "accepted or retained the benefit without paying for its value." *Schmidt v. Household Fin. Corp., II*, 661 S.E.2$^d$ 834, 838 (Va. 2008). Moreover, where there is "a valid contract defin[ing] the obligations of the parties as to matters within its scope, ... to that extent [the contract displaces] any inquiry into unjust enrichment." Restatement (Third) of Restitution & Unjust Enrichment § 2; *accord Federal*

---

[5] It is not clear to what "insurance proceeds" Young is referring.

11

*Deposit Ins. Corp. v. S.A.S. Assocs.*, 44 F. Supp. 2$^d$ 781, 787 (EDVa. 1999); *Southern Biscuit Co. v. Lloyd*, 6 S.E.2$^d$ 601, 606 (Va. 1940).

In the instant case, the first lien deed of trust and underlying promissory note define the obligations of Citi and Young with respect to the property and preclude any unjust enrichment claim against Citi. *E.g., Lion Assocs., LLC v. Swiftships Shipbuilders, LLC*, 475 Fed. Appx. 496, 503 (4th Cir. 2012) (a cause of action for unjust enrichment was unavailable to a plaintiff, where an express contract exists covering the activity).

The second lien deed of trust and promissory note similarly define the obligations between Young and Chase, and they cast a similarly long shadow over her unjust enrichment claim against Chase. Without question they preclude any claim by Young for late fees, interest or other charges that may have been assessed by Chase pursuant to the express terms of the second loan. Likewise, they negate any suggestion of some implied contract between Young and Chase, and they demonstrate that Young's unjust enrichment claim has no basis in law. *See Brown v. HSBC Mortg. Corp.*, 2011 U.S. Dist. LEXIS 80943, *14 (EDVa. Jul. 22, 2011). Moreover, Young's expectation under her unjust enrichment claim against Chase that Chase was obligated to reimburse her for the loss of her equity in the residence as result of Chase's purchase of the property at the trustee's sale is patently not a reasonable one.

As to both defendants, therefore, Count Three of Young's Amended Complaint should be dismissed.

*Breach of Contract*

*(Count Five against CitiMortgage)*[6]

In Count Five, Young asserts that "Citi breached the contract with [her] through dual tracking." Amended Complaint at 8 (¶ 28). Although a claim sounding in contract may well fit the facts of this case under some circumstances, Young's complaint fails to state one with the specificity required by *Twombly* and *Iqbal*. It fails to identify any contractual promise that Citi allegedly breached, and absent the breach of an identifiable promise by Citi, her allegation that "CitiMortgage breached the contract" is nothing more than a conclusory allegation, which falls fatally short of showing an entitlement to relief. *See, e.g., Alston v. Massachusetts*, 661 F. Supp. 2d 117, 124 (DMass. 2009) ("simply assert[ing] that [the defendant] has breached a contract, without giving any facts about the terms or obligations created by this alleged contract, ... fail[s] ... 'plausibly' to state a claim a breach of contract....").

As part of any consideration of the plaintiff's breach of contract claim, it must be noted that Young, in her complaint alleged that Citi breached its obligations to her by engaging in "dual tracking,"[7] and in her brief in opposition she offered several facts which could conceivably indicate that Citi's dual tracking action is the basis for her contract breach claim.

---

[6] In Count Five, Young does not refer to Chase nor allege that Chase breached any contract with her, and this Count, therefore, is deemed to apply only to CitiMortgage.

[7] *Dual tracking* has been generally described as "a common bank tactic" in which a lender will continue to pursue foreclosure on a defaulted home loan, even while the homeowner has an application pending for loan modification. Alejandro Lazo, *Banks are Foreclosing while Homeowners Pursue Loan Modifications*, Los Angeles Times (Apr. 14, 2011). Thus, a borrower whyose loan is being "dual-tracked" may believe that her or his application for modification is being considered and not take any steps to avert a foreclosure; then, unbeknownst to the borrower, foreclosure may become imminent, and the borrow's first indication of the lender's intention may be, as it was for Young, a foreclosure notice. *See Lindberg v. Wells Fargo Bank N.A.*, 2013 U.S. Dist. LEXIS 57, *7 (NDCal. Apr. 22, 2013).

Therein, she represents that her breach of contract claim is based neither on the deed of trust nor the promissory note, but is, she suggests, based on subsequent (but unspecified) promises made by the Citi employees. (Docket #36 at 5). And she therein further explains,

> "There was a contract for a loan modification by reason of requiring the Plaintiff to submit an application for a loan modification, and receiving and accepting the loan modification application. However Defendant Citimortgage breached that contract by not moving forward with a modification or ever providing any further information to the Plaintiff before moving to foreclose."

(Docket #36 at 2–3).

Although dual tracking by Citi in the instant case may have operated counter to Young's expectation and contrary to a recent California statute, [8] it does not amount to a breach of contract absent a promise by the lender or servicer not to engage in the practice. Neither in her complaint nor at oral argument was Young able to identify any such promise by Citi or by anyone acting on its behalf. Therefore, despite the plaintiff's assertion to the contrary, Citi's acceptance of Young's application for mortgage modification did not, by itself, impose any cognizable legal obligation or duty on the part of Citi to halt foreclose activities while her application was pending.

In *Sherman v. Litton Loan Servicing, L.P.*, 796 F. Supp. 2$^d$ 753 (EDVa. 2011), the Eastern District of Virginia expressly rejected a contract claim predicated on a loan servicer's offer to "properly and timely review" an application for mortgage modification under the HAMP program. *Id.* at 762. As the court noted in its opinion, it was "clear both from [the] plaintiff's complaint and the face of the [servicing company's] solicitation … that [the servicing

---

[8] "In July 2012, California passed legislation referred to as 'The California Homeowner Bill of Rights' which prohibits dual tracking." *Singh v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 63127, *5 (EDCal. May 2, 2013).

company's] offer was merely an offer to consider plaintiff's application for a loan modification, not an outright offer to modify plaintiff's mortgage." *Id.* In all relevant respects the undisputed facts in the instant case are the same, and they compel the same conclusion. Citi's offer to the plaintiff to apply for a loan modification and its subsequent acceptance of her application simply do not, as a matter of law, create a binding obligation to modify her mortgage. Absent the existence of such an enforceable agreement, the plaintiff's breach of contract claim cannot withstand the defendants' Rule 12(b)(6) motions and cannot meet the plausibility standard required under *Twombly* and *Iqbal*. Therefore, Count Five merits dismissal as to Citi.

### Fraud against CitiMortgage
### (Count Six)

Count Six in Young's complaint seeks recovery for fraud. As support for this contention, she alleges that "CitiMortgage committed misrepresentations and suppressions against [her]" by leading her "to believe that she was in the process of a loan modification," even though they "had no intention of honoring their representation." Amended Complaint at 9 (¶¶ 31–32). She further alleges that Citi "suppressed from Defendants [sic] the truth that it intended to foreclose on Plaintiff on Dec. 5, 2011 until it was too late for her to take action." *Id.* at 9 (¶ 33). She adds that "[a]ll misrepresentations, and suppressions of these material facts, were made intentionally, recklessly, and/or negligently." *Id.* at 9-10 (¶¶ 34 and 41). Finally, she alleges reliance on these representations to her detriment, because she "could have taken steps to prevent the foreclosure" but was prevented from doing so because she was given such short notice of foreclosure. *Id.* at 9-10 (¶¶ 35–36 and 43).

Under Rule 9(b) of the Federal Rules of Civil Procedure, allegations of fraud must be pled with particularity, and to satisfy this elevated pleading requirement in her complaint Young must "identify who, what, where, when, and how." *United States ex rel. Costner v. United States*, 317 F.3$^d$ 883, 888 (8th Cir. 2003). While she "need not plead evidence to satisfy this Rule's requirements," at a minimum she must identify specifically the "alleged misrepresentations or omissions" on which her claim is based. *Dep't of Econ. Development v. Arthur Andersen & Co.*, 747 F. Supp. 922, 938 (SDNY. 1990); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3$^d$ 776, 784 (4th Cir. 1999) (Rule 9(b)'s pleading requirements include "'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained.'") (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297 at 590 (2$^d$ ed, 1990); *Matanic v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 134154, *18 (EDVa. Sep. 19, 2012) ("...Virginia law require[s] that claims for fraud be pled with particularity.").

This heightened pleading standard, under both Rule 9(b) and Virginia law, at a minimum requires Young to set forth "'the misrepresentation of present pre-existing facts, [9] and it cannot ordinarily be predicated on unfulfilled promises or statements as to future events.'" *Abi-Najm v. Concord Condominium, LLC*, 699 S.E.2$^d$ 483, 480 (Va. 2010) (quoting *Lloyd v. Smith*, 142 S.E. 363, 365 (1928)).

---

[9] In Virginia, an action for fraud "'may sometimes be predicated on promises which are made with a present intention not to perform them, *Lloyd v. Smith*, 142 S.E. 363, 365 (1928), or on the concealment or on the failure to disclose a material fact, *Van Deusen v. Snead*, 441 S.E.2$^d$ 207, 209 (Va. 1994), or on the existence of a fiduciary duty that carries a affirmative duty to disclose material facts, *Augusta Mut. Ins. Co. v. Mason*, 645 S.E.2$^d$ 290, 294 (Va. 2007).

Accepting as true all of the amended complaint's well-pleaded allegations and viewing it in the light most favorable to the plaintiff, Young's complaint fails to disclose any specific acts or omissions that would give rise to liability for fraud under Virginia law. Multiple numbered paragraphs in Young's complaint include conclusory allegations [10] that fail to satisfy even the more lenient and elemental requirement of Rule 8, much less meet the heightened pleading requirements necessary to state a cognizable cause of action for fraud under Rule 9.

In the narrative section of her complaint, Young does offer details about various communications between her and Citi; however, neither in her complaint nor during argument did she specify or even suggest that any of these representations was factually inaccurate. In fact, the only statement that might be construed as at all inaccurate is Shameka Morseley's assurance in September 2011 that she (Morseley) "was on the case." Amended Complaint at 3. Clearly, her statement is far too "vague and indefinite" to support a claim of fraud. *See, e.g. Tate v. Colony House Builders, Inc.*, 508 S.E.2$^d$ 597, 599 (Va. 1999) (statements about the design and construction of the dwelling being of the "highest quality" are in the nature of puffing or opinion "and cannot form the basis of an action for constructive fraud"). *See also Evertz v. Aspen Med. Group*, 169 F. Supp. 2d 1027, 1028–1029 (DMinn. 2001) (an employer's statements, in response to employee's inquiries about a severance package, that she would "look into it" and that "she was working on it" held to be too vague and indefinite to support misrepresentation claim); *Georgen-Saad v. Texas Mut. Ins. Co.*, 195 F. Supp. 2$^d$ 853, 861 (WDTex. 2002) (an employer's statement that he was "trying" to get the plaintiff a raise held to be too vague and indefinite to support a fraud claim).

---

[10] *See, e.g.* Amended Complaint at 9 (¶ 33) alleging that CitiMortgage "suppressed ... the truth that it intended to foreclose"); *Id.* at 9 (¶ 37) implying thereby that Citi "lie[d] about the fact that foreclosure will not occur."

Both from her pleadings and her argument, Young makes it clear that she regards Citi's failure to inform her about whether and when it would foreclose as fraudulent. In other words, she views Citi's failure to inform her that it was engaged in dual tracking her loan as an act of fraud and deception. This argument does not withstand scrutiny. Although concealment can give rise to a fraud claim, it is only in cases where there exists a duty to disclose the concealed fact. *See Kitchen v. Throckmorton*, 286 S.E. $2^d$ 673, 677 (Va. 1982) (a misrepresentation by an administratrix held by "an objective standard" to be constructive fraud); *Adkins v. Crown Auto, Inc.*, 488 F.$3^d$ 225, 230-233 (4th Cir. 2007) (knowing and intentional concealment of a vehicle's mileage and the fact that it was a "clipped vehicle" in order to induce the plaintiff's purchase found to constitute actual fraud). In contrast, in the instant case Citi had no fiduciary duty to Young. It had no cognizable duty to speak or even to state its foreclosure intentions, and Young's complaint alleges no lies or misrepresentations on the part of Citi. In short, Young's complaint fails to allege any fraud on the part of Citi.

To the extent that Young's complaint suggests that Citi's acceptance of her loan modification request carried with it an implied promise to hold any foreclosure activity in abeyance pending action on her request, such a claim also fails to constitute an act of fraud. It is at most an attempt by Young to rely on an illusory promise. As such, it confers no legally enforceable rights either on her or Citi. *Compass Bank v. Limon*, 464 Fed. Appx. 782, 787 (11th Cir. 2012). Lacking any cognizable allegation of fraud Count Six, should also be dismissed with prejudice against CitiMortgage. [11]

---

[11] In Count Six, Young does not refer to Chase nor allege that Chase committed any fraud against her.

In Count Seven, Young alleges that the defendants negligently or recklessly "hired, supervised, and/or trained incompetent agents or employees who committed some or all of the wrongful acts set forth in this Complaint" and that the defendants "knew or should have known of the incompetence of these agents or employees." Amended Complaint at 10 (¶¶ 46–47).

"Under Virginia law, to establish actionable negligence, [a] plaintiff has 'the burden to show the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." *Sherman v. Litton Loan Servicing, L.P.*, 796 F. Supp. 2$^d$ 753, 764 (EDVa. 2011) (quoting *Atrium Unit Owners Ass'n v. King*, 585 S.E.2$^d$ 545, 548 (Va. 2003). Ordinarily a "legal duty" that arises solely from a contractual obligation is not actionable in tort in Virginia. *Id.* (citing *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2$^d$ 344, 347 (Va. 1998). It is only where the omission or non-performance of a contractual duty also violates "'certain common law and statutory duties involving the safety of persons and property, which are imposed to protect the broad interests of society,'" that a duty may sound both in contract and in tort. *Kaltman v. All Am. Pest Control, Inc.*, 706 S.E.2$^d$ 864, 870 (Va. 2011) (quoting *Filak v. George*, 594 S.E.2$^d$ 610, 613 (Va. 2004)).

Consistent with this principle, at least since 1988 the Supreme Court of Virginia has recognized a common law duty of a company to exercise reasonable care in a hiring decision, *J. v. Victory Tabernacle Baptist Church*, 372 S.E. 2$^d$ 391, 393 (Va. 1988), and at least since 1999 it has recognized the independent tort of negligent retention, *Southeast Apts. Mgmt., Inc. v. Jackman*, 513 S.E. 2$^d$ 395, 397 (Va. 1999). Contrary, however, to the plaintiff's assertion of a

claim based on "negligent ... supervision, Virginia law does not recognize such a cause of action against an employer. *Chesapeake & Potomac Telephone Co. of Va. v. Dowdy*, 365 S.E.2$^d$ 751, 754 (Va. 1988); *Spencer v. Gen. Elec. Co.*, 894 F.3$^d$ 651, 656-657 (4th Cir. 1990).

In essence, the torts of negligent hiring and negligent retention predicate liability on the duty of an employer not to place a person with known propensities, or propensities that should have been discovered by reasonable investigation, in an employment position in which, because of the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others. *Interim Personnel of Central Va., Inc. v. Messer*, 559 S.E.2$^d$ 704, 707 (Va. 2002); *Southeast Apts. Mgmt., Inc.*, 513 S.E.2$^d$ at 397.

Application of these principles to the facts alleged by Young compels a finding that her complaint is insufficient to make out a *prima facie* case either of negligent hiring or negligent retention against either defendant. Moreover, these allegations by the plaintiff's are legally insufficient irrespective of whether a plaintiff must plead physical harm, as the defendants argue, to state a negligent hiring or retention claim under Virginia law. [12]

The thrust of Young's negligent hiring claim is that Citi should have known that its employees would, and did, fumble the processing of her loan modification application. However, as outlined above, under Virginia law, a breach of contract may only sound in tort if

---

[12] The Virginia Supreme Court has not squarely addressed the question of whether a plaintiff must plead physical harm, *Wolf v. Fauquier Cnty. Bd. of Supervisors*, 555 F.3$^d$ 311, 330 (4th Cir. 2009), and federal and lower state courts have split (although a clear majority have held that physical injury is required). *See Investors Title Ins. Co. v. Lawson*, 68 Va. Cir. 337 (2005) (noting the split in authority).

the contractual duty breached is also a duty imposed at common law. [13] Manifestly, any obligations Citi arguably had in connection with the processing of Young's application for a loan modification could have arisen only from the contract between her and Citi, and as such they did not flow from the common law.

Citi owed no general, common-law duty of care in carrying-out either foreclosure or its consideration of Young's loan modification request. Its duties were defined solely by any enforceable promises it made. [14] By extension, therefore, it could not owe Young any duty to hire employees who will conduct the loan modification process effectively. Despite her allegations to the contrary, Young's claims of negligent hiring and negligent retention cannot be based solely on negligent breach of contract. *See Richmond Metro. Auth.*, 507 S.E.2$^d$ at 347. Irrespective of whether the alleged "negligence" was the result of some hiring or retention decision by Citi, as a lender it simply owed Young, as a borrower, no duty of care giving rise to a negligence claim.

The same goes for Chase—it too did not owe Young any duty of care to process her requests for refinancing, and it too had no duty to hire employees who would carry out that process effectively.

---

[13] Plaintiffs' complaint neither alleges the breach of any fiduciary duty owed by Citi's pursuant to the terms if the deed of trust nor does it allege that the deed of trust required Citi to provide accurate loan reinstatement and payoff amountsor to keep her fully informed as to the status of the foreclosure proceedings, or even to communicate with her in a timely manner regarding the status of her loan modification application. *See Carter v. Countrywide Home Loans, Inc.*, 2008 U.S. Dist. LEXIS 67014, *30-31 (EDVa. Sep 3, 2008),

[14] "Under long-settled contract law, when 'some further act of the purported offeror is necessary, the purported offeree has no power to create contractual relations, and there is as yet no operative offer.' 1 Joseph M. Perillo, *Corbin on Contracts* § 1.11, at 31 (rev. ed. 1993). See also 1 Richard A. Lord, *Williston on* Contracts § 4:27 (4th ed. 2011) ('[A] condition of subsequent approval by the promisor in the promisor's sole discretion gives rise to no obligation.')." *Spaulding v. Wells Fargo Bank, N.A.*, 2013 U.S. App. LEXIS 7866, *18 (4th Cir. Apr. 19, 2013).

Accordingly, Count Seven should be dismissed with prejudice against both defendants.

*Violation of Fair Debt Collection Practices Act against Defendants*
*(Count Nine)*

In Count Nine, Young seeks recovery for what she describes as "numerous and multiple violations of the FDCPA." [15] Amended Complaint at 11 (¶ 54). In asserting this claim, Young ignores the fact that creditors, such as Citi and Chase, and their employees are generally not "debt collectors" within the meaning of the FDCPA and are no subject to FDCPA liability. 15 U.S.C. § 1692a(6) (defines a *debt collector* as someone "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another").

None of the well-pleaded facts in Young's complaint suggest that any exception to that rule applies in the instant case. *Cf. Maguire v. Citicorp Retail Services, Inc.*, 147 F.3$^d$ 232 (2$^d$ Cir. 1998) (holding that a creditor may violate the FDCPA by carrying out debt collection efforts under a false name to give the debtor the misimpression that a third party is collecting the debt). The mere fact that Citi is alleged by the plaintiff to have utilized a third party to collect the debt does not make it liable for any violations committed by the collector. *White v. Goodman*, 200 F.3$^d$ 1016, 1017 (7th Cir. 2000) (explaining that the "false name" exception to the FDCPA's creditor exemption does not apply, if "the third party is participating in the debt collection, for then there is no deception"). Thus, Count Nine should be dismissed with prejudice against both defendants.

---

[15] Fair Debt Collection Practices Act (15 U.S.C. §§ 1692 *et seq.*)

*"Intrusion Upon Seclusion" Claim against Defendants*

*(Count Ten)*

In Count Ten, Young complains that the defendants intruded upon her seclusion and solitude "by repeatedly or unlawfully attempting to collect a debt and thereby invaded [her] privacy." Amended Complaint at 11 (¶ 60). This claim should be dismissed with prejudice because Virginia law does not recognize such a cause of action. *WJLA-TV v. Levin*, 564 S.E.2$^{d}$ 383, 394 n.5 (Va. 2002).

## B.     Request to Conduct Discovery

Young argued during oral argument that, if she was afforded the opportunity to conduct discovery against the defendants, she would uncover evidence of wrongdoing. The Federal Rules of Civil Procedure, however, do not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–679. And the court has no authority to order the defendants to submit to such a fishing expedition. *See Riddick v. United States*, 2005 U.S. Dist. LEXIS 13397, *19 (EDVa. Jul. 6, 2005) ("The discovery process is not a 'fishing expedition,' and [a party] is not entitled to discovery simply in hope that something will turn up.") (citations and internal quotation marks omitted).

## C.     Dismissal with Prejudice is Appropriate

Citi and Chase have requested the court dismiss Young's complaint with prejudice and without leave to amend. Given the fact that Young has filed two complaints, made two responses to the defendants' motions to dismiss, and twice been given ample opportunity to

argue orally each of the bases for claim and bases of her opposition to the defendants' motions, there is nothing in her pleadings, responses or statements at the hearings to suggest that any further leave to amend would be fruitful. There is simply no reason to suspect that a third attempt to state a claim, based on what in essence is an untenable theory of liability, will fare any better than her first two. *See Cozzarelli v. Inspire Pharmaceuticals, Inc.*, 549 F.3$^d$ 618, 630 (4th Cir. 2008).

## V.     PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis and on the basis of a careful examination of the pleadings and other papers filed herein, the following formal findings of fact and conclusions of law are submitted:

1. Young identifies no legal duty independent of a contractual relationship that would oblige CitiMortgage to modify her mortgage or refrain from foreclosing, and accordingly, states no claim against CitiMortgage in tort;

2. Young has identified no contractual relationship that would oblige CitiMortgage to modify her mortgage or refrain from foreclosing, and accordingly, states no contractual claim against CitiMortgage;

3. Virginia law does not recognize a cause of action for "wrongful foreclosure";

4. Young has no claim for malicious prosecution against Chase based on the action for ejectment Chase brought against her because Chase prevailed in that action;

5. Young identifies no legal duty independent of a contractual relationship that would oblige Chase to offer her refinancing, and accordingly, states no claim against Chase in tort;

6. The contractual relationship between Young and CitiMortgage precludes her unjust enrichment claim against CitiMortgage;

7. Chase was not unjustly enriched in its purchase of the property and the trustee's sale, and the contractual relationship between Young and Chase otherwise precludes her unjust enrichment claim against Chase;

8. Young's submission of an application for mortgage modification did not give rise to an enforceable contract;

9. Young fails to state a cause of action for breach of contract because she fails to identify any contractual promise that CitiMortgage has failed to perform;

10. In her complaint, Young identifies no false statement of material fact by any CitiMortgage employee that would support a claim for fraud;

11. Chase and CitiMortgage owed Young no general duty of care to hire, train, or retain employees that will process her applications for mortgage modification effectively;

12. As creditors, Chase and CitiMortgage are not liable under the Fair Debt Collection Practices Act, either for their actions or for the actions of third party collection agents;

13. Virginia law does not recognize a cause of action for "intrusion upon seclusion";

14. Young's Amended Complaint fails to state a cause of action on which the court can grant her relief;

15. The plaintiff's Amended Complaint fails to meet the pleading requirements of Rule 8 as to either defendant;

16. The plaintiff's Amended Complaint fails to meet the pleading requirements of Rule 9(b) as to either defendant;

17. There is no genuine dispute as to any material fact, and each defendant is entitled to judgment as a matter of law, pursuant to Rule 12(b)(6);

18. Further leave to amend would be futile, and the plaintiff's Amended Complaint should be dismissed with prejudice.


## VI.     INSTRUCTIONS TO CLERK

The clerk is directed to transmit the record in this case immediately to the presiding district judge and to transmit a copy of this Report and Recommendation to the plaintiff and to all counsel of record.

## VII.   NOTICE TO THE PARTIES

Both sides are reminded that pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

**DATED:** This 23rd day of May 2012.

s/ *James G. Welsh*
United States Magistrate Judge